UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ruby Jones, as guardian and conservator for Mary Elizabeth Williams, a vulnerable adult<br><br>Plaintiffs,<br><br>vs.<br><br>South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands 510; South Carolina Department of Disabilities, Special Needs d/b/a Coastal Center-Highlands Hillside; Freddie Lee Cunningham; Nyosha Young; and Lameia Bennett,<br><br>Defendants. | CASE NO.: 2:24-cv-02511-RMG<br><br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiff, Ruby Jones, as guardian and conservator for Mary Elizabeth Williams, a vulnerable adult, complaining of the Defendants, South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands 510, South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands Hillside, Freddie Lee Cunningham, Nyosha Young, and Lameia Bennett, alleges as follows:

**PARTIES, JURISDICTION, & VENUE**

1. Plaintiff Ruby Jones is the duly appointed guardian and conservator for Mary Elizabeth Williams ("Mary"), a vulnerable adult, and is the party bringing this action on her behalf. Ms. Jones is a citizen and resident of Dorchester County, South Carolina.

2. Defendant South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands 510 is a governmental agency existing under the laws of the State of South Carolina, which conducts business in Dorchester County, South Carolina at 9995 Miles Jamison Road, Summerville, South Carolina.

3. Defendant South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands Hillside is a governmental agency existing under the laws of the State of South

1

Carolina, which conducts business in Dorchester County, South Carolina at 9995 Miles Jamison Road, Summerville, South Carolina.

4. Freddie Lee Cunningham was employed by South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands 510 and Coastal Center-Highlands Hillside and, at all times herein, was acting in the course and scope of his employment under color of law. Cunningham is sued in his individual capacity under 42 U.S.C. § 1983, 1988, and the Fourteenth Amendment to the United States Constitution. Upon information and belief, Cunningham is a citizen and resident of Dorchester County, South Carolina.

5. Nyosha Young was employed by South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands 510 and Coastal Center-Highlands Hillside and, at all times herein, was acting in the course and scope of her employment under color of law. Young is sued in her individual capacity under 42 U.S.C. § 1983, 1988, and the Fourteenth Amendment to the United States Constitution. Upon information and belief, Young is a citizen and resident of Dorchester County, South Carolina.

6. Lameia Bennett was employed by South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands 510 and Coastal Center-Highlands Hillside and, at all times herein, was acting in the course and scope of her employment under color of law. Bennett is sued in her individual capacity under 42 U.S.C. § 1983, 1988, and the Fourteenth Amendment to the United States Constitution. Upon information and belief, Bennett is a citizen and resident of Dorchester County, South Carolina.

7. Plaintiff brings this action in this Division as the incidents that give rise to this action occurred in Dorchester County, South Carolina. Plaintiff further invokes this Court's concurrent jurisdiction to hear claims existing alongside and arising from the same facts and circumstances as those arising under the United States Constitution, the Fourteenth Amendment to the United States Constitution, and federal statutes 42 U.S.C. §§ 1983, 1988.

## FACTUAL ALLEGATIONS

8. The preceding paragraphs are repeated and reiterated as if fully set forth herein.

### Background Relating to SCDDSN

9. Defendant South Carolina Department of Disabilities and Special Needs ("SCDDSN") is the state agency that plans, develops, coordinates, and funds services for South Carolinians with severe, lifelong disabilities, including but not limited to, intellectual disabilities, developmental disabilities, and related disabilities.

10. SCDDSN's mission is to provide the very best services to assist all persons with disabilities and their families in South Carolina.

11. SCDDSN provides services, including residential services and treatment, to vulnerable adults.

12. A vulnerable adult means "a person eighteen years of age or older who has a physical or mental condition which substantially impairs the person from adequately providing for his or her own care or protection. This includes a person who is impaired in the ability to adequately provide for the person's own care or protection because of the infirmities of aging including, but not limited to, organic brain damage, advanced age, and physical, mental, or emotional dysfunction. A resident of a facility is a vulnerable adult." S.C. Code Ann. § 43-35-5.

13. The Omnibus Adult Protection Act provides a system of protection in South Carolina for vulnerable adults.

14. SCDDSN directly operates five regional centers, which provide residential services and treatment to individuals with the most extensive needs, including vulnerable adults, such as Mary.

15. One such SCDDSN regional center is the Coastal Center, which is comprised of Coastal Center-Highlands 510 and Coastal Center-Highlands Hillside (collectively, the "Coastal Center") and is located at 9995 Miles Jamison Road, Summerville, South Carolina.

16. At all times relevant to this action, SCDDSN, Coastal Center, and their employees and agents were required to comply with The Omnibus Adult Protection Act and all other state and federal

3

statutes, laws regulations, and industry standards regarding vulnerable adults under their care, custody, supervision, and control.

17. At all times relevant to this action, SCDDSN, Coastal Center, and their employees and agents were required to safeguard the human and civil rights of vulnerable adults under their care, custody, supervision, and control.

18. At all times relevant, SCDDSN and Coastal Center held themselves out as being qualified to provide appropriate care for Mary Williams, and others similarly situated.

19. At all times relevant, SCDDSN and Coastal Center held themselves out as being committed to ensuring that each person under their care, supervision, and control is treated with dignity and respect, including Mary Williams, and others similarly situated.

20. At all times relevant, SCDDSN and Coastal Center held themselves out as being committed to ensuring that each person under their care, supervision, and control is in a safe environment, including Mary Williams, and others similarly situated.

21. At all times relevant, SCDDSN and Coastal Center held themselves out as being committed to ensuring that each person under their care, supervision, and control is free from abuse and neglect, including Mary Williams, and others similarly situated.

22. At all times relevant, SCDDSN and Coastal Center held themselves out as being committed to ensuring that each person under their care, supervision, and control is free from civil rights violations.

### Background Relating to Mary

23. On or about November 29, 2012, Mary was admitted to the Coastal Center and placed under the care, supervision, and control of SCDDSN and Coastal Center.

24. Mary was admitted to Coastal Center due to her inability to provide for her own care and protection because of her intellectual disabilities and status as a vulnerable adult.

25. Mary was dependent on SCDDSN, Coastal Center, and their employees to meet her needs and safeguard her well-being.

26. SCDDSN and Coastal Center and their employees knew that Mary was at risk for unauthorized leave or elopement from Coastal Center.

27. Mary had an Individual Support Plan ("ISP") at Coastal Center designed, in part, to address this specific risk.

28. Mary's ISP required SCDDSN and Coastal Center employees to maintain close supervision of Mary at all times.

29. Mary's ISP identified "unauthorized leave," to include walking into the street, as a target behavior that must be addressed in order to maintain Mary's safety.

30. Unauthorized leave from the premises and elopement were such a known and foreseeable concern to Defendants that Mary's ISP directed Defendants and their employees to provide "physical guidance" to overcome Mary when she attempts to leave the premises and walks into the roadway.

31. Defendants and their employees knew that, if Mary became agitated or upset, then it may trigger her to attempt to leave the premises without authorization and elope from Coastal Center.

32. Defendants and their employees knew that Mary's target behavior of unauthorized leave was a substantial safety concern, due to the foreseeable risk of Mary walking into the roadway because of her intellectual disability and status as a vulnerable adult.

### April 30, 2022 Incident

33. Prior to April 30, 2022, SCDDSN and Coastal Center hired and were responsible for the proper training and supervision of employees Freddie Lee Cunningham ("Cunningham"), Nyosha Young ("Young"), and Lameia Bennett ("Bennett") in accordance with South Carolina statutes and regulations, Coastal Center policies and procedures, and industry standards.

34. Prior to April 30, 2022, SCDDSN and Coastal Center were careless and reckless with regard to the hiring, training, and supervision of Cunningham, Young, and Bennett.

35. Prior to April 30, 2022, SCDDSN and Coastal Center knew or should have known that

5

Cunningham, Young, and Bennett were unfit for the duties to which they were assigned.

36. Prior to April 30, 2022, SCDDSN and Coastal Center knew or should have known that it was foreseeable that residents of the Coastal Center could suffer injury or death as a result of Cunningham, Young, and Bennett being unfit for the duties to which they were assigned.

37. On April 30, 2022, Cunningham, Young, and Bennett were employees of SCDDSN and Coastal Center.

38. On April 30, 2022, SCDDSN, Coastal Center, Cunningham, Young, and Bennett were responsible for the safety and well-being of Mary at Coastal Center.

39. On April 30, 2022, Mary was neglected by SCDDSN and Coastal Center, as a direct and proximate result of their failures with regard to the hiring, training, and supervision of Cunningham, Young, and Bennett.

40. On April 30, 2022, while under the care, custody, supervision, and control of SCDDSN and Coastal Center, Mary was physically, verbally, mentally, and emotionally abused by Cunningham, Young, and Bennett.

41. On April 30, 2022, Mary was pushed, kicked, hit, and otherwise abused multiple times by Cunningham, Young, and Bennett.

42. On April 30, 2022, Mary was pushed to the ground by Cunningham, Young, and/or Bennett.

43. On April 30, 2022, Mary was kicked by Cunningham, Young, and/or Bennett.

44. On April 30, 2022, Mary was struck in the face multiple times by Cunningham, Young, and/or Bennett.

45. Cunningham, Young, and Bennett were each charged with Abuse of a Vulnerable Adult by the South Carolina Law Enforcement Division ("SLED").

46. On April 30, 2022, Mary's civil rights were violated by SCDDSN, Coaster Center, Cunningham, Young, and Bennett.

47. On April 30, 2022, SCDDSN, the Coastal Center, Cunningham, Young, and Bennett violated the Omnibus Adult Protection Act, with regard to Mary.

6

### October 15-16, 2022 Incident

48. After Mary was the victim of abuse and neglect on April 30, 2022, Mary was at an increased risk for unauthorized leave from the premises and elopement.

49. SCDDSN and Coastal Center knew that Mary was at an increased risk for unauthorized leave from the premises and elopement after the April 30, 2022 abuse and neglect.

50. After having been the victim of abuse and neglect on April 30, 2022, Mary's attempts to elope Coastal Center understandably became more frequent.

51. For example, in October of 2022, there were at least four documented episodes of Mary attempting to elope from Coastal Center.

52. SCDDSN and Coastal Center knew or should have known that Mary required increased and additional supervision after the April 30, 2022 abuse and neglect, for the specific purpose of preventing unauthorized leave and elopement and ensuring Mary's safety.

53. In the late evening of October 15, 2022 and early morning hours of October 16, 2022, Mary eloped from Coastal Center's premises.

54. Mary exited the Coastal Center facility.

55. Mary exited the main entrance of the Coastal Center campus.

56. Mary walked onto Miles Jamison Road.

57. At approximately 12:30 a.m., Mary was struck by a vehicle on Miles Jamison Road, at a location approximately 0.25 miles from the Coastal Center campus.

58. Mary's elopement constitutes "unauthorized leave" as is contemplated and referenced by Mary's ISP.

59. At no time prior to Mary being struck by the vehicle on October 16, 2022 did anyone at SCDDSN or Coastal Center utilize physical guidance to overcome Mary's resistance in order to get Mary out of the roadway to maintain her safety.

60. Such use of physical guidance was required by Mary's ISP.

61. In the late evening of October 15, 2022 and/or early morning hours of October 16, 2022, Mary

7

was the victim of neglect.

62. In the late evening of October 15, 2022 and/or early morning hours of October 16, 2022, one or more employees violated Mary's civil rights.

63. In the late evening of October 15, 2022 and/or early morning hours of October 16, 2022, one or more employees violated the Omnibus Adult Protection Act, with regard to Mary.

64. As a direct and proximate result of the continuum of abuse and neglect suffered by Mary on April 30, 2022 and October 15-16, 2022, Mary sustained catastrophic and life-changing physical, mental, and emotional injuries and damages, including but not limited to pelvic fracture, facial fracture, orbital floor fracture, thoracic spine fracture, lumbar vertebral fracture, rib fractures, shoulder dislocation, respiratory failure, and multiple lacerations. Mary's medical bills total in excess of $950,000.00.

**Legislative Audit Council Audit of SCDDSN**

65. Members of the General Assembly asked the Legislative Audit Council ("LAC") to conduct of SCDDSN to evaluate multiple issues, including concerns for consumer/resident protection against abuse, neglect, and exploitation, as well as compliance with state and federal laws and regulations, and use of best practices.

66. The period of audit review was generally calendar years 2021 through 2023.

67. At all times relevant to this action, SCDDSN was under audit and review by LAC.

68. In October of 2023, LAC issued a report containing its analysis, findings, and recommendations, *A Limited Review of the S.C. Department of Disabilities and Special Needs: New and Continuing Issues at DDSN [Part 2 of 2]*.

69. LAC found that SCDDSN does not always respond appropriately to allegations of abuse, neglect, or exploitation ("ANE"), in violation of the Omnibus Adult Protection Act.

70. LAC found that SCDDSN was not adequately training its employees on issues related to ANE.

71. LAC found that SCDDSN routinely failed to report suspected ANE during the timeframe required by state law, federal regulations, and its own guidelines.

72. LAC found that SCDDSN's investigations of allegations of ANE routinely lacked thoroughness.

73. LAC found that SCDDSN was not conducting adequate training in response to allegations of ANE in that SCDDSN either didn't maintain such training records or, more likely, was not conducting such training in the first place.

74. LAC found that SCDDSN was not conducting background checks on potential employees during the hiring process, in violation of state law which requires such background checks.

75. LAC found that SCDDSN, in some instances, was allowing its employees who were involved in allegations of ANE to resign for "personal" reasons rather than be terminated. In some instances, such employees were rehired by SCDDSN.

76. LAC found that SCDDSN failed to ensure that its hiring practices limit the opportunity for abuse and neglect.

77. LAC found that SCDDSN was not adequately providing training to its consumers/residents at its regional centers as to informing and educating consumers/residents of their own rights, despite being required by state law, federal regulations, and its own guidelines to do so.

78. In sum, LAC found that SCDDSN is failing to protect vulnerable adults in its care from abuse, neglect, and exploitation.

79. In response to LAC's audit, findings, and recommendations, SCDDSN stated there was "no excuse for past shortcomings" and blamed prior leadership.

80. These myriad violations or, as SCDDSN phrased it, "past shortcomings," constituted a policy, custom, practice, or pattern by SCDDSN and Coastal Center.

**APPLICABILTY OF S.C. CODE § 15-79-110, ET SEQ.**

81. The preceding paragraphs are repeated and reiterated as if fully set forth herein.

82. To the extent Plaintiff is required to comply with the requirements of S.C. Code § 15-79-110, et. seq., Plaintiff filed a Notice of Intent on April 25, 2024 in the Dorchester Court of Common Pleas, styled as "Ruby Jones, as guardian and conservator for Mary Elizabeth Williams, a

vulnerable adult v. South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands 510; and South Carolina Department of Disabilities and Special Needs d/b/a Coastal Center-Highlands Hillside."

**FOR A FIRST CAUSE OF ACTION**
**(As to Defendants Cunningham, Young, and Bennett)**
**(42 U.S.C. § 1983 –Fourteenth Amendment)**

83. The preceding paragraphs are repeated and reiterated as if fully set forth herein.

84. Cunningham, Young, and Bennett were governmental employees acting under the color or pretense of state law, customs, practices, usage, and/or policy, at all times mentioned herein.

85. Cunningham, Young, and Bennett had certain duties imposed upon them with regard to Mary, a vulnerable adult under their care, custody, supervision, and control.

86. At all times relevant, Cunningham, Young, and Bennett were well aware of Mary's constitutional rights, including but not limited to Mary's right to due process and right to be free from physical harm by government actors.

87. These rights were clearly established at the time of the complained of incidents.

88. Cunningham, Young, and Bennett violated Mary's clearly established and well-settled constitutional rights protected by the Fourth Amendment to the United States Constitution:

   a. The right to bodily integrity;

   b. The right to be free from physical abuse by government actors without justification or due process;

   c. The right to be free from mental/emotional abuse by government actors without justification or due process;

   d. The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking conduct as secured by the Fourteenth Amendment;

   e. The right to be free from deprivation of life, limb and property without due process;

   f. The right to be free from state created/enhanced danger as secured by the Fourteenth Amendment; and

g. And in such other particulars as may be learned through discovery.

89. The conduct of Cunningham, Young, and Bennett was so egregious and so outrageous that it may be said to shock the conscience.

90. Cunningham, Young, and Bennett knew or should have known that their conduct was unlawful and unconstitutional.

91. A reasonable governmental employee under the same or similar circumstances could never have reasonably believed that their conduct was permissible under established standards and laws.

92. As a direct and proximate result of the violation of her constitutionally protected, clearly established rights, Mary suffered catastrophic and life-changing physical, mental, and emotional injuries and damages.

93. As Mary's guardian and conservator, Plaintiff is entitled to recover actual and punitive damages as determined by a jury, as well as reasonable attorney's fees.

**FOR A SECOND CAUSE OF ACTION**
**(As to Defendants Cunningham, Young, and Bennett)**
**(42 U.S.C. § 1983 – State Created Danger)**

94. The preceding paragraphs are repeated and reiterated as if fully set forth herein.

95. Cunningham, Young, and Bennett are liable for their unconstitutional actions in creating the dangerous situation that resulted in Mary suffering injuries and damages.

96. Cunningham, Young, and Bennett created or increased the risk of private and danger and did so directly through affirmative acts as set forth above.

97. Cunningham, Young, and Bennett violated 42 U.S.C. § 1983 while acting under the color of law in the following respects:

a. In causing or creating an obvious, foreseeable danger of harm to Mary;

b. In engaging in conduct, actions, or omissions that caused or created an obvious, foreseeable danger of harm to Mary;

c. There was no danger to Mary until such danger was created by the actions and

11

omissions of Defendants;

d. In such other particulars as will be learned through discovery and proven at trial.

98. As a direct and proximate result of the state created danger caused by Defendants, Mary suffered catastrophic and life-changing physical, mental, and emotional injuries and damages.

99. As Mary's guardian and conservator, Plaintiff is entitled to recover actual and punitive damages as determined by a jury, as well as reasonable attorney's fees.

**FOR A THIRD CAUSE OF ACTION**
**(As to Defendants SCDDSN & Coastal Center)**
**(Negligence, Negligence Per Se, Gross Negligence)**

100. The preceding paragraphs are repeated and reiterated as if fully set forth herein.

101. SCDDSN, Coastal Center, and their employees owed certain statutory and common law duties to residents/consumers of their facilities, including Mary.

102. SCDDSN, Coastal Center, and their employees breached these duties as set forth in the particulars below.

103. SCDDSN and Coastal Center's employees were acting within the course and scope of their employment at all times relevant.

104. SCDDSN and Coastal Center are liable for the actions and omissions of their employees pursuant to the South Carolina Tort Claims Act.

105. SCDDSN and Coastal Center's employees were negligent, grossly negligent, and negligent per se in the following particulars:

a. In violating one or more provisions of Omnibus Adult Protection Act;

b. In physically abusing Mary;

c. In mentally/emotionally abusing Mary;

d. In neglecting Mary;

e. In allowing the abuse and neglect of Mary;

f. In allowing Mary's civil rights to be violated;

g. In failing to properly supervise and monitor Mary;

    h.    In failing to properly supervise and monitor employees who had been tasked with supervising Mary;

    i.    In allowing Mary to elope from the premises;

    j.    In allowing Mary to walk into the roadway;

    k.    In failing to comply with the requirements of Mary's ISP;

    l.    In failing to comply with state and federal law, regulations, and industry standards with regard to caring for and supervising Mary;

    m.    In failing to exercise the degree of care that a reasonable employee would have under the same or similar circumstances;

    n.    In such other particulars as will be learned through discovery and proven at trial.

106.    SCDDSN and Coastal Center are further liable for their own careless and reckless actions and omissions pursuant to the South Carolina Tort Claims Act.

107.    SCDDSN and Coastal Center were negligent, grossly negligent, and negligent per se in the following particulars:

    a.    In failing to have in place reasonable and appropriate policies and procedures related to the hiring and vetting of employees suitable for employment;

    b.    In failing to properly hire and vet employees tasked with caring for and supervising vulnerable adults, including Mary;

    c.    In failing to have in place reasonable and appropriate policies and procedures related to the training of employees on South Carolina law, federal law, industry standards, constitutional rights, standards of care, and their own policies and procedures regarding care, custody, supervision, and control of vulnerable adults, including Mary;

    d.    In failing to properly train their employees;

    e.    In failing to have in place reasonable and appropriate policies and procedures related to the supervision of employees who have been tasked with caring for and supervising vulnerable adults, including Mary;

   f. In failing to properly supervise employees;

   g. In failing to properly train and supervise employees with regard to the requirements contained in Mary's ISP;

   h. In failing to implement reasonable and adequate policies and procedures;

   i. In failing to properly train employees on methods to prevent elopement by vulnerable adults, including Mary;

   j. In failing to properly train employees on methods to restrain or otherwise redirect vulnerable adults, including Mary;

   k. In failing to safeguard Mary's civil rights;

   l. In failing to protect Mary from harm;

   m. In failing to exercise the degree of care that a reasonable employee would have under the same or similar circumstances;

   n. In such other particulars as will be learned through discovery and proven at trial

108. As a direct and proximate result of the careless, reckless, negligent, grossly negligent, and negligent per se actions and omissions by SCDDSN and Coastal Center and their employees, Mary suffered catastrophic and life-changing physical, mental, and emotional injuries and damages.

109. As Mary's guardian and conservator, Plaintiff is entitled to recover actual and punitive damages as determined by a jury.

WHEREFORE, Plaintiff prays for the following:

   a. A trial by jury;

   b. Judgements against Defendants, jointly and severally, for all damages recoverable under State and Federal law, to include, without limitation, actual and punitive damages;

   c. That the jury be instructed on the definition of "occurrence" under the Tort Claims Act and provided with a verdict form that allows for the finding of multiple occurrences;

14

d. The costs of this action;

e. Reasonable attorney's fees;

f. For such other relief as the Court may deem just and proper.

                        CLAWSON FARGNOLI UTSEY, LLC

                        <u>s/ Christy R. Fargnoli</u>
                        Samuel R. Clawson, Jr.(11850)
                        Christy R. Fargnoli (10364)
                        The Presqu'ile House
                        2 Amherst Street
                        Charleston, SC 29403
                        Phone: (843) 970-2700
                        sam@cfulaw.com
                        christy@cfulaw.com

                        BAMBERG LEGAL, LLC
                        Justin T. Bamberg, Esquire (11363)
                        104 Bridge Street
                        Bamberg, South Carolina 29003
                        Phone: (803) 956-5088
                        Fax: (803) 956-5094
                        Email: jbamberg@bamberglegal.com

                        Attorneys for Plaintiff

April 25, 2024
Charleston, South Carolina